JAMES R. WHEATON (SBN 115230)
DAVID A. GREENE (SBN 160107)
1736 Franklin Street, Ninth Floor
Oakland, CA 94612
Telephone: (510) 208-7744
Facsimile: (510) 208-4562
wheaton@thefirstamendment.org
dgreene@thefirstamendment.org
gking@thefirstamendment.org


MELINDA HAAG (CSBN 132612)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
NEILL T. TSENG (CSBN 220348)
Assistant United States Attorney

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> Telephone: (415) 436-7155
> FAX: (415) 436-6927
> neill.tseng@usdoj.gov

Attorneys for Defendant
U.S. CUSTOMS AND BORDER PROTECTION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EDWARD HASBROUCK, | No. C 10-03793 RS |
| Plaintiff, | SECOND JOINT CASE MANAGEMENT CONFERENCE STATEMENT |
| vs. | Date: March 17, 2011 |
| U.S. CUSTOMS AND BORDER PROTECTION, | Time: 11:45 a.m. |
| | Place: Courtroom 3, 17th floor, 450 Golden Gate Ave, San Francisco, CA 94102 |
| Defendant. | Honorable Richard Seeborg |

The parties jointly submit this Second Joint Case Management Conference Statement and

request that the Court adopt it as its Case Management Order in this action.

**1.     Date case was filed.**

The complaint was filed on August 25, 2010.

**2.     List or description of all parties**.

The plaintiff is Edward Hasbrouck, a U.S. citizen and a resident of San Francisco in the Northern District of California. Hasbrouck works as member of the news media as an author, freelance journalist, blogger, and consultant to the Identity Project, which is based in Oakland, California. Hasbrouck has worked for the IDP for the past four years. Hasbrouck seeks the records described in the Complaint in his capacity as a professional journalist.

The defendant is the U.S. Customs and Border Protection, a federal agency.

**3.     Summary of all claims, counter-claims, cross-claims, third party claims.**

Plaintiff has sued defendant for violations of the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Plaintiff allegedly seeks information regarding defendant's intelligence-gathering activities targeting travelers not suspected of any crime. Plaintiff asserts that resolution of this case will involve both the adequacy of defendant's search for responsive records and any statutory exemptions defendant has claimed or may claim.

Defendant asserts that it has already provided to plaintiff all required records, and has otherwise legally withheld the production of other records or portions of records relating to third parties, the agency's law enforcement sensitive databases, and/or which are otherwise exempted from release.

There are no counter-claims, cross-claims or third party claims.

**4.     Brief description of the event underlying the action.**

This action is based on various Privacy Act and/or FOIA requests made by plaintiff. Plaintiff's first request (the "2007 Request") was a letter titled "Privacy Act Request" in which plaintiff requested all records about himself in the Automated Targeting System ("ATS"). Defendant alleges that the letter was unsigned and undated. Plaintiff alleges that the letter was signed and dated, and produced a copy of the signed and dated letter and waiver with its initial

SECOND JOINT CASE MANAGEMENT CONFERENCE STATEMENT
C 10-03793 RS                            2

disclosures (Bates numbers FAP 0050-0053).  On or around August 13, 2007, defendant replied to plaintiff's 2007 Request and produced 16 pages of responsive documents, some of which contained redactions based on claimed statutory exemptions.

Plaintiff asserts that he sent a letter of appeal dated September 13, 2007, with regard to his 2007 Request.  Defendant asserts that it did not receive the letter and did not find out about the appeal until February 2009, when plaintiff inquired about the status of the appeal.  Plaintiff made three additional requests all dated October 15, 2009: one titled "Privacy Act Request" and two titled "FOIA/Privacy Act Requests."  The requests sought (1) information concerning plaintiff under the ATS and specified other systems of records; (2) an accounting of all disclosures of records pertaining to plaintiff from ATS and other specified systems of records; (3) information concerning the processing of plaintiff's 2007 Request and purported September 13, 2007, appeal; and (4) information concerning search methods for various electronic systems of records.  In response to those requests, defendant released certain documents, some of which contained redactions based on claimed statutory exemptions, and withheld certain documents based on claimed statutory exemptions.  Plaintiff appealed defendant's responses via letters dated December 10, 2009, and plaintiff and defendant subsequently had various conversations regarding the appeals over the phone and through email.  On August 30, 2010, defendant sent plaintiff a letter related to the appeals of plaintiff's October 15, 2009, requests.  On September 15, 2010, defendant sent plaintiff  a letter related to the appeal of plaintiff's 2007 Request and released 47 pages of records, some of which were redacted as purportedly containing  personally identifiable information pertaining to other persons which defendant considered to be non-responsive. Defendant believes that these letters constituted decisions on plaintiff's appeals under FOIA and/or the Privacy Act. Plaintiff contends that these letters failed to give proper notice of any Privacy Act determinations or decisions on Privacy Act appeals.

On October 28, 2010, after plaintiff had filed this action, after defendant had sent its letters to plaintiff of August 30, 2010, and September 15, 2010, and after defendant had

answered the complaint on October 12, 2010, plaintiff purportedly filed appeals of any portion of defendant's August 30, 2010, and September 15, 2010, letters which constituted or were intended to constitute determinations with respect to plaintiff's Privacy Act requests.  Defendant believes any such appeals were improper since this action had already been brought in district court.

On December 17, 2010, plaintiff participated, purportedly by telephone, in a "Privacy Information for Advocates" meeting hosted by Mary Ellen Callahan of the Department of Homeland Security, of which defendant U.S. Customs and Border Patrol is a component agency. At the meeting, plaintiff purportedly noted that he had great difficulty receiving responses to his FOIA and Privacy Act requests from DHS. Ms. Callahan then purportedly requested that plaintiff send her a list of his outstanding FOIA and Privacy Act requests so that she could look into them. Allegedly following up on that express request, plaintiff sent Ms. Callahan seven emails listing several requests and appeals including the CBP requests and appeals at issue in this case.

Ms. Callahan responded to plaintiff's seven emails by a single email dated December 23, 2010.  Regarding the pertinent requests and appeals to defendant CBP, Ms. Callahan stated:

> . . . CBP processed your requests – submitted under the Privacy Act – under both the Privacy Act and FOIA.  As the records requested were found in systems of records exempt from the access provisions of the Privacy Act, the requests (and related appeals) were also processed under FOIA. . . . Since you are currently engaged in litigation with CBP and the Department in U.S. District Court for the Northern District of California, it would be inappropriate for me to comment on these matters. Any communications between the Department (or its components) and you which concern matters that are subject of that litigation should be made through your attorney to the Department's attorney and the Assistant U.S. Attorney in San Francisco.

Plaintiff did respond by email on that same day to other items addressed by Ms. Callahan, but, as requested, did not address the CBP requests and appeals at issue in this litigation.

**5.    Description of relief sought and damages claimed.**

Plaintiff seeks a declaration that Defendant has violated the Privacy Act and FOIA; injunctive relief ordering defendant to conduct complete and thorough searches for all requested records, and produce all non-exempt requested records so located; injunctive relief ordering defendant to process in accordance with the Privacy Act all records processed solely under FOIA; injunctive relief ordering plaintiff to reveal all redacted material as requested in Plaintiff's September 13, 2007 letter; injunctive relief ordering defendant to promptly release to plaintiff all non-exempt requested records on each subject in the manner and order specified by plaintiff; costs and reasonable attorneys' fees incurred in this action; and other relief as the Court may deem just and proper.

Defendants seek dismissal and costs.

## 6.     Status of discovery.

Defendant served its initial disclosures on or around December 21, 2010.  Plaintiff served his initial disclosures on or around December 30, 2010.  To date, no discovery has been taken by either party.  In the first Case Management Conference Statement, the parties indicated that "[d]iscovery, if any, in this case is expected to be quite limited and likely will not extend beyond the parties' initial disclosures."  Doc. #18 at ¶ 6; see also Doc. #15 at 2.  Plaintiff informed the court that it reserved the right to seek discovery pursuant to Fed. R. Civ. P. 56(f) *after* defendant filed its motion for summary judgment and opposing papers, and defendant reserved the right to oppose any such request.  See Doc. #18 at ¶ 6 (emphasis added).

At the first Case Management Conference, plaintiff indicated that given an alleged lack of clarity over how the Privacy Act and FOIA requests had been processed, Plaintiff desired to conduct some very limited and focused discovery Plaintiff requested time for the parties to resolve the matter informally rather than through formal discovery and asked that the court set this second case management conference. The court granted that request.

Plaintiff sent defendant a facsimile dated January 24, 2011, requesting discovery or a

sworn declaration on certain subjects.   A copy of that letter is attached hereto as Exhibit A.  Via facsimile and letter dated March 8, 2011, defendant declined plaintiff's request.  A copy of that facsimile/letter is attached hereto as Exhibit B.

The parties disagree over whether discovery should be allowed.  The parties will attempt to further meet and confer before the case management conference.  Should those efforts fail, they may request an opportunity to brief this issue for the court's decision.

**7.     Procedural history of the case.**

No motions have been decided or submitted.

The parties participated in a telephone conference with the ADR Unit on January 4, 2011, where it was agreed that this case was not appropriate for inclusion in the ADR program.

No appellate proceedings are pending or concluded.

This case was originally assigned to Magistrate Judge Chen.  Plaintiff consented to Magistrate Judge Chen but defendant did not consent and requested reassignment to a district judge.  The case was subsequently reassigned to Judge Seeborg.

**8.     Other deadlines in place.**

None.

**9.     Any requested modification of these dates and reason for the request.**

Not applicable.

**10.    Whether the parties will consent to a magistrate judge for trial.**

Defendant does not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**11.    Whether Judge Seeborg has previously conducted a settlement conference in this case.**

Judge Seeborg has not previously conducted a settlement conference in this case.

**12.     Jurisdiction and Service.**

Plaintiff's asserted basis for the court's subject matter jurisdiction is pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(5), as well as 28 U.S.C. §§ 1331, 1346(a)(2), and 1361.

The parties know of no issues regarding personal jurisdiction or venue and know of no parties remaining to be served.

**13.     Motions.**

Defendant anticipates filing a motion for summary judgment. Plaintiff anticipates filing a motion for summary judgment and believes that this case is most efficiently resolved by cross-motions when the undisputed factual record is sufficiently developed.

**14.     Amendment of Pleadings.**

The parties do not anticipate amending the pleadings.

**15.     Evidence Preservation.**

Plaintiff does not utilize an automatic email deletion system. Plaintiff has archived all email and other communications relevant to this case, including all email to or from defendant in his possession or control since the filing of this matter. Plaintiff is preserving the records related to his FOIA and / or Privacy Act requests at issue in this action.

Defendant has implemented a litigation hold to preserve and retain documents and materials potentially relevant to this litigation, including electronically stored information. Plaintiff's counsel specifically requested that defendant preserve "any record of any search term that was used to process my client's requests." Defendant has informed plaintiff that no such records exist. On the basis of defendant's Privacy Impact Assessments for the systems of records at issue, plaintiff believes that such records should exist. Defendant also asked plaintiff to let defendant know if there was anything specific plaintiff would like to be preserved aside from the records responsive to plaintiff's FOIA and/or Privacy Act requests at issue in this action and the

(nonexistent) records of any search term that was used to process plaintiff's requests. Until the date of filing of this document, March 10, 2011, defendant did not hear any such request to preserve additional documents. Defendant is preserving the records responsive to plaintiff's FOIA and/or Privacy Act requests at issue in this action.

Plaintiff hereby, for the first time on March 10, 2011, specifically requests that defendant preserve all search slips, search records or logs or any other record that reflects the efforts defendant made to comply with the Privacy Act and FOIA requests at issue. Plaintiff further asserts that to the extent that defendant will rely on such records in proving that is has adequately searched for records responsive to plaintiff's Privacy Act and FOIA requests, such records should have been produced to plaintiff as par to f defendant's initial rule 26(a) disclosures. Defendant has not had an opportunity to determine yet whether any such records exist or were already produced.

**16.    Class Action.**

Not applicable.

**17.    Related Cases.**

There are no related cases.

**18.    Other References.**

None at this time.

**19.    Narrowing of the Issues.**

The parties had previously agreed, and represented to the court, that defendant would provide a draft Vaughn index to plaintiff in advance of filing a motion for summary judgment and that the parties would meet and confer about the draft Vaughn index in an attempt to narrow the issues to be adjudicated by motion. <u>See</u> Doc. #18 at ¶ 19. The parties had also proposed a

deadline for the draft Vaughn index.  See id. at ¶ 21.  Shortly before the initial case management conference, however, plaintiff informed defendant that he had changed his mind and no longer wished to utilize a draft Vaughn index to narrow the issues.

If the court desires, defendant is still willing to provide a preliminary Vaughn index and meet and confer with plaintiff about it ahead of filing its motion for summary judgment in an attempt to narrow the issues to be adjudicated by the court on such motion.

Plaintiff does not object to a receiving a Vaughn index in advance of  a summary judgment motion as long as the Vaughn index reflects defendant's full and complete position as of that date. Defendant is amenable to doing so with the recognition that the preliminary index may change afterward based on the parties' meet and confer efforts.

**20.    Expedited Schedule.**

The parties do not believe an expedited schedule is appropriate for this case.

**21.    Scheduling.**

Scheduling will depend on whether discovery is allowed and to what extent, on whether defendant will provide a draft Vaughn index, and on the timing of cross-motions for summary judgment.

As noted above, plaintiff prefers the discovery as outlined above with any necessary follow-up. However, as an alternative, plaintiff is also amenable to a cross-motion briefing schedule whereby plaintiff has adequate time, for example, two months, after the receipt of defendant's opening brief to determine whether to request additional discovery, or prepare and file a cross-motion.

The parties will be prepared to discuss scheduling further at the case management conference.

**22.     Trial.**

The parties anticipate that this action will involve purely legal issues and will be resolved by motion without the need for a trial.

**23.     Disclosure of Non-Party Interested Entities or Persons.**

Plaintiff is aware of no other interested entities or persons.

As a governmental entity or agency, defendant is exempt from the disclosure requirement of Civil Local Rule 3-16.

**24.     Other matters.**

None at this time.

FIRST AMENDMENT PROJECT

DATED: March 10, 2011          By:      _____/s/_____
                                                                DAVID GREENE
                                                                Attorney for Plaintiff

                                                                MELINDA HAAG
                                                                United States Attorney

DATED: March 10, 2011          By:      _____/s/_____
                                                                NEILL T. TSENG
                                                                Assistant United States Attorney
                                                                Attorneys for Defendant

SECOND JOINT CASE MANAGEMENT CONFERENCE STATEMENT
C 10-03793 RS                              10

EXHIBIT A

# FIRST AMENDMENT PROJECT

1736 Franklin St., 9th Floor, Oakland, CA 94612 □ phone: 510.208.7744 □ fax: 510.208.4562 □ www.thefirstamendment.org

David Greene                              Geoffrey King                              James Wheaton
Executive Director/Staff Counsel          Staff Attorney                             Senior Counsel

January 24, 2011

Mr. Neill Tseng
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94103
Fax: (415) 436-6927

> Re:   *Hasbrouck v. U.S. Customs and Border Protection*
>       N.D. Cal. case no. 3:10-cv-03793-EMC RS

By Fax

Dear Mr. Tseng:

I write regarding my client's need for limited discovery in this matter, per our discussions on and around January 6, 2011.

As we discussed, we have come to the conclusion that an on-the-record clarification of the status of my client's FOIA and Privacy Act requests is necessary for this litigation to proceed in an efficient and fully-informed manner. Based on CBP's answer it is unclear which of Mr. Hasbrouck's requests were processed under FOIA, the Privacy Act or both. Until we understand under which statute the requests were processed it will be difficult for us to frame a summary judgment or partial summary judgment proceeding, or to know whether any adequacy of search issues remain.

Thus we seek discovery regarding the following:

**June 22, 2007 Privacy Act Request, September 13, 2007 Appeal and October 28, 2010 Appeal**

1.   Whether CBP fully processed Plaintiff's June 22, 2007 Privacy Act request pursuant to FOIA, the Privacy Act, both or neither. Any response should address whether CBP applied FOIA and/or the Privacy Act to the specific categories of information requested, including but not limited to:

    a.   Advance Passenger Information ("API").
    b.   PNR ("Passenger Name Record") information obtained from commercial air, rail or road carriers.
    c.   Computerized Reservations Systems ("CRS").
    d.   Global Distribution Systems ("GDS").

e.   PNR aggregators or intermediaries, or other third parties; any other records related to any risk assessment; the rules used for determining the assessments and any pointer or reference to the underlying records from other systems that resulted in the assessments.

2.   When CBP received the September 13, 2007 and October 28, 2010 appeals of the June 22, 2007 Privacy Act request.

3.   Whether the September 13, 2007 appeal has been fully processed under FOIA, the Privacy Act, both or neither. Any response should address whether CBP applied FOIA and/or the Privacy Act to the specific categories of information requested, including but not limited to:

a.   ATS or PNR records relating to Plaintiff's travel prior to June 23, 2003.
b.   PNRs containing data entered by, or otherwise identifiable with Mr. Hasbrouck in his capacity as a travel agent, including: PNRs from the Sabre computerized reservation system showing PNR history entries from pseudo-city code A787 and agent sines A24 or AEH; and all records identifiable with the ARC/IATA travel agency ID number 05626515 and agent "EH" or "EDWARD".
c.   PNRs not displayed on the "face" (front page) or "history" (audit trail) of the PNR;
d.   Split PNRs identifiable with Mr. Hasbrouck through "SPLIT" or "DIVIDED" references in PNRs, as well as any API data and any other ATS information associated with those split PNRs.
e.   Risk assessments pertaining to Mr. Hasbrouck or risk assessment records identifiable with Mr. Hasbrouck.
f.   Rules used for determining the risk assessments mentioned above.
g.   API data concerning Mr. Hasbrouck, including API data corresponding to the air travel PNRs disclosed in the CBP's response to Mr. Hasbrouck's request as well as API data received from rail and road carriers.

4.   Whether the October 28, 2010 appeal has been fully processed under FOIA, the Privacy Act, both or neither.

**October 15, 2009 Privacy Act Request, December 10, 2009 Appeal and October 28, 2010 Appeal**

5.   Whether CBP processed Plaintiff's October 15, 2009 Privacy Act request pursuant to FOIA, the Privacy Act, both or neither. Any response should address whether CBP applied FOIA and/or the Privacy Act to the specific categories of information requested, including but not limited to:

a.   Information pertaining to Mr. Hasbrouck contained in the Automated Targeting System (ATS, DHS/CBP-006); Advance Passenger Information System (APIS, DHS/CPB-005); Border Crossing Information System (BCIS, DHS/CBP-007); Arrival and Departure Information System (ADIS, DHS/USVISIT-001); and U.S. Customs and Border Protection TECS (DHS/CBP-011). These categories include

Passenger Name Record (PNR) data and Interagency Border Inspection System (IBIS) data, as well as all information relating to Mr. Hasbrouck referenced in the "Categories of Records in the System" section of the "System of Records Notice" (SORN) for each system of records.

b.   Indexes of TECS records as well as the detail page or pages pertaining to each entry on that index.

c.   With respect to ATS, all of the categories listed in the August 6, 2007 SORN published at 72 *Federal Register* 43650-43656, including any PNR information, any records relating to any risk assessments, and any pointer or reference to the underlying records from other systems that resulted in the assessments. This includes all PNR data in any of these systems of records, all portions of the PNR and any other data included in or retrievable from the PNR.

d.   Information about Mr. Hasbrouck contained in PNRs for his own travel as well as any information about him in PNRs for other individuals' travel.

e.   Any APIS, ADIS, BCIS, ATS, TECS or other information from air or surface transportation carriers.

f.   Mr. Hasbrouck's request for a complete accounting of disclosures made of any or all of the above-mentioned records.

6.   Whether CBP processed Plaintiff's December 10, 2009 and October 28, 2010 Privacy Act appeals pursuant to FOIA, the Privacy Act, both or neither.

**October 15, 2009 FOIA and Privacy Act Request, December 10, 2009 Appeal and October 28, 2010 Appeal**

7.   Whether CBP processed Plaintiff's October 15, 2009 FOIA and Privacy Act request pursuant to FOIA, the Privacy Act, both or neither. Any response should address whether CBP applied FOIA and/or the Privacy Act to the specific categories of information requested, including but not limited to:

a.   Any and all documents and records created by CBP or other agencies in the course of processing the June 22, 2007 Privacy Act request and the September 13, 2007 appeal, including includes any responsive records of (1) the CBP FOIA and Privacy Act offices; (2) the office(s) in which Stephen Christenson (who signed a USPS Certified Mail receipt for the appeal) did or does work, or to which his former duties, files, or records were transferred or assigned; (3) any other office or agency which was consulted or contacted by CBP in the course of processing Mr. Hasbrouck's request and/or appeal; and (4) any other office or agency identifiable as having, or likely to have responsive records.

8.   Whether CBP processed Plaintiff's December 10, 2009 and October 28, 2010 FOIA and Privacy Act appeals pursuant to FOIA, the Privacy Act, both or neither.

**October 15, 2009 FOIA and December 10, 2009 Appeal**

9.     Whether CBP processed Plaintiff's October 15, 2009 FOIA request pursuant to FOIA, the Privacy Act, both or neither. Any response should address whether CBP applied FOIA and/or the Privacy Act to the specific categories of information requested, including but not limited to:

a.     Any user manuals, training manuals or materials, reference manuals, query format guides, search protocols or instructions, interpretation guides, standard operating procedures, contract specifications, software use cases or other functional or technical specifications; Application Programming Interface (API) specifications and formats for any software or systems which contain, process, or interact with these records; and the contents of any online or electronic help or reference system for any of these systems.

b.     Any responsive records of (1) the CBP FOIA and Privacy Act offices (such as protocols, references, and manuals that may be used in retrieving and/or interpreting PNR or other data in response to Privacy Act and/or FOIA requests); (2) offices or agencies responsible for policies and procedures related to the collection, retention, or use of this data; (3) any offices or agencies which have access to or use records retrieved from these systems of records, and which may have manuals, protocols, or the like for such usage; (4) any offices or agencies responsible for or engaged in development, deployment, or operation of software or systems that use data from, or interface with, these systems of records, or contracting with third parties for such development, deployment, or operation, and (5) any other office or agency identifiable as having, or likely to have, responsive records.

We believe that the following information can be furnished via declaration or by the propoundment of interrogatories. Our hope is that by conducting limited discovery, the parties will be able to narrow issues, save a round of briefing, and create other efficiencies.

Thank you for your anticipated cooperation. I look forward to hearing from you.

Sincerely,

Geoffrey King

EXHIBIT B

**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*9th Floor, Federal Building*                                     *(415) 436-7155*
*450 Golden Gate Avenue, Box 36055*                        *Fax:(415) 436-6927*
*San Francisco, California  94102*                             *neill.tseng@usdoj.gov*

**VIA FACSIMILE AND U.S. MAIL**

March 8, 2011

David Greene
Executive Director/Staff Counsel
FIRST AMENDMENT PROJECT
California Building
1736 Franklin Street, Ninth Floor
Oakland, CA 94612

    Re: *Edward Hasbrouck v. U.S. Customs and Border Protection*
       Civil No. 10-3793 RS

Dear Mr. Greene:

   This letter responds to the facsimile from Geoffrey King dated January 24, 2011, seeking discovery in the above captioned litigation.  I understand that Mr. King no longer works for the First Amendment Project, and therefore I address my response to you.

   As an initial matter, defendant notes that plaintiff's request for discovery is contrary to previous statements plaintiff made to the court:

     Discovery, if any, in this case is expected to be quite limited and likely will not extend beyond the parties' initial disclosures. . . . .

     . . . . Additionally, with respect to the Freedom of Information Act no discovery may be conducted without leave of the Court. . . . Plaintiff reserves the right to seek discovery pursuant to Fed. R. Civ. P. 56(f) ***after Defendant files its motion for summary judgment*** and accompanying papers.

Joint Case Management Conference Statement ("JCMCS") (Doc. #18)  ¶ 6 (emphasis added).  Plaintiff made similar statements in the Rule 26(f) Report.  See Fed. R. Civ. P. 26(f) Report (Doc. #15) at 2.

   Judge Seeborg cautioned at the initial case management conference that discovery is ordinarily unavailable in FOIA actions, a principle which is well accepted.  *See, e.g., Judicial Watch, Inc. v. Exp.-Imp. Bank,* 108 F.Supp. 2d 19, 25 (C.D.Cir. 2000); *Pub. Citizen Health Research Group v. FDA,* 997 F.Supp. 56, 72 (D.D.Cir. 1998), *aff'd in part, rev'd in part, and remanded on other grounds,* 185 F.3d 898 (D.C.Cir. 1999).  Plaintiff has not set forth any persuasive reason why this case should be an exception to that principle.  In the fax dated January 24, Mr. King wrote (at page 1), "Until we understand under which statute the requests were processed it will be difficult for us to frame a summary

Mr. David Greene
March 8, 2011
Page 2

judgment or partial summary judgment proceeding, or to know whether any adequacy of search issues remain." That was surprising because in the JCMCS, plaintiff did not mention filing any summary judgment motion. See JCMCS ¶ 13.

In any event, it has long been known by both parties that defendant intends to file a motion for summary judgment. The motion will contain supporting affidavits and a memorandum of law demonstrating that defendant's search was adequate and that any withheld documents or redacted information falls within an exemption to the FOIA. Discovery relating to the agency's search and the exemptions invoked for withholding records generally is unnecessary if the agency's supporting evidence is adequate on its face. *See Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 (1980); *see Miscavige v. IRS,* 2 F.3d 366, 369 (11th Cir. 1993); *Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 711-12 (4th Cir. 1986) (approving district court's decision denying discovery because agency affidavit filed with summary judgment motion made need for discovery "moot.").

Defendant originally proposed giving plaintiff a draft Vaughn index before filing its summary judgment motion for the purpose of narrowing the issues for the court and for the parties as much as possible. That draft index may well have provided plaintiff with the information he now seeks. However, plaintiff rejected that proposal. If plaintiff does now wish to file his own motion for summary judgment or partial summary judgment, the parties could accomplish that by way of cross-motion, in which defendant first files its motion, and then plaintiff files his opposition and a cross-motion for summary judgment afterward. Plaintiff would have all the factual information he now seeks by way of the declarations and other documents filed with defendant's motion, and if he did not, he could move for discovery under Rule 56(f), as plaintiff proposed in the JCMCS.

For the reasons stated above, defendant declines plaintiff's request to allow formal discovery or to provide information by way of declaration at this time. Nevertheless, defendant believes that the information plaintiff seeks has already been provided by way of defendant's letters to Mr. Hasbrouck dated August 30, 2010, and September 15, 2010 (Bates-stamped in defendant's initial disclosures as US00001-16), as well an email from the Department of Homeland Security ("DHS") to Mr. Hasbrouck dated December 23, 2010 (enclosed). We refer you to those documents, which discuss the status and processing of Mr. Hasbrouck's sundry requests and appeals in detail. Item numbers 5 and 6 in the December 23, 2010, email pertain to the October 28, 2010, "appeal" that Mr. Hasbrouck submitted to CBP. (The other items in that email do not pertain to this lawsuit.) With regard to item numbers 5 and 6, DHS informed Mr. Hasbrouck:

As it relates to items #5 and 6, CBP processed your requests – submitted under the Privacy Act – under both the Privacy Act and FOIA. As the records requested were

Mr. David Greene
March 8, 2011
Page 3

found in systems of records exempt from the access provisions of the Privacy Act, the requests (and related appeals) were also processed under FOIA.

Mr. Hasbrouck responded to that email without any further complaint, "appeal" or discussion of item numbers 5 and 6 (see enclosed email from Mr. Hasbrouck dated December 23, 2010).

Very truly yours,

MELINDA L. HAAG
United States Attorney

By: _____
NEILL T. TSENG
Assistant United States Attorney

Enclosures
cc:    Helen Bouras

**From**: Callahan, Mary Ellen <Mary.Ellen.Callahan@dhs.gov>
**To**: Edward Hasbrouck <edward@hasbrouck.org>
**Cc**: Plofker, Howard TSA OCC; SUZUKI, SHARI; Pietra, Peter; Gramian, Nikki; Bird, Rose M;
Papoi, Catherine; Lockett, Vania; Holzerland, William; Callahan, Mary Ellen; Parker, Lynn
**Sent**: Thu Dec 23 11:45:07 2010
**Subject**: Response to 7 separate emails


Mr. Hasbrouck:

During the recent Privacy Information for Advocates (an event I have been hosting
informally with privacy advocates since I came on board, and an invitation that I request
Lillie Cooney extend to the Privacy Coalition each time) on December 17, you indicated
that you never receive any responses to your FOIA requests, and that you doubted the
underlying DHS administrative numbers as a result. I offered to track down the status of
the FOIA requests for which you never received any response. As a result of my offer,
you sent me 7 different emails related to various complaints and issues you have with
multiple components of this Department regarding disclosure and other matters. These
emails did not seem to deal with responsiveness or acknowledgement but rather are
complaints about the merits. As I am using it, the term "complaint" refers to
correspondence of a customer service-related (as opposed to legal) nature, recognizing
there may also be related legal complaints associated with these issues. Please note this
response does not address any allegations of waste, fraud or abuse submitted to the DHS
Office of Inspector General; it only addresses matters concerning disclosure requests. The
items can be summarized as follows:

1.) Renewal of a complaint submitted repeatedly to various entities between
November 3, 2009 and December 16, 2009.

2.) Complaint related to TSA10-0134 – FOIA request for TSA screening SOP dated
12/9/10.

3.) Complaint related to an appeal (dated 10/21/10) regarding constructive denial of
your request submitted to TSA dated 8/2/10 for records related to the processing
of TSA08-0723, TSA10-0052, TSA10-0134, TSA10-0179, and TSA10-0248 and
related appeals.

4.) Complaint related to PRIV10-1019, as well as an appeal dated 10/21/10 of
constructive denial of your request submitted to PRIV (and other entities) 8/17/10
for records related to complaints about FOIA matters submitted to various entities
between November 3, 2009 and December 16, 2009.

5.) Complaint related to CBP 2007F4114 in the form of correspondence dated
10/28/10 related to the processing of an initial request and related appeal.

6.) Complaint related to CBP H089015, H089016, and H089017 in the form of correspondence dated 10/28/10 related to the processing of three initial requests and related appeals.

7.) SORN complaint unrelated to the disclosure-related issues.

With respect to item #1, this item has been previously addressed by colleagues at TSA, by the FOIA Public Liaison within DHS and by NARA's Office of Government Information Services (OGIS). Please refer to the attached August 2010 email correspondence between my office and you on these matters. We also discussed this matter during Friday's PIA meeting, including with input from Bob Gellman. The DHS Privacy Office considers the item closed.

Regarding items #2-3, my understanding is that you spoke with Howard Plofker of TSA at length regarding these items on December 14 and at that time, Howard provided you with detailed status information on all items.

As to the initial request listed in item #4, we estimate records processed by the DHS Privacy Office will be released to you by December 31, 2010, rendering the appeal of constructive denial dated October 28, 2010 moot. Please note that this is an estimate, and not a guarantee. I understand you've previously been advised on multiple occasions that constructive denial is not something that may be appealed under the DHS Interim FOIA Regs (found here: http://www.dhs.gov/xlibrary/assets/FOIA_FedReg_Notice.pdf).

As it relates to items #5 and 6, CBP processed your requests – submitted under the Privacy Act – under both the Privacy Act and FOIA. As the records requested were found in systems of records exempt from the access provisions of the Privacy Act, the requests (and related appeals) were also processed under FOIA. It is the policy of the U.S. Department of Homeland Security to process requests and appeals in this manner to afford the requester the greatest degree of access in their particular circumstances, regardless of which statute the requester cites in their initial request or appeal correspondence. Since you are currently engaged in litigation with CBP and the Department in U.S. District Court for the Northern District of California, it would be inappropriate for me comment on these matters. Any communications between the Department (or its components) and you which concern matters that are the subject of that litigation should be made through your attorney to the Department's attorney and the Assistant U.S. Attorney in San Francisco.

With regard to item #7, that is not a disclosure issue nor is it before the DHS Privacy Office, but the DHS Privacy Office notes that all of your SORN-related comments were addressed in the final rulemaking filings.

I believe this addresses each of the items that you sent to me, and I believe the Department has been responsive on each of these items previously. As I offered on the call last week, if you have trouble getting a response from my colleagues, I am willing to help facilitate a response, but when you have already discussed these issues at length with my colleagues, I will not consider these to be "non-responsiveness" and therefore will not facilitate additional interactions.

Thank you, and best wishes for the new year,
Mary Ellen Callahan

Mary Ellen Callahan, CIPP
Chief Privacy Officer
U.S. Department of Homeland Security
245 Murray Lane SW, Mail Stop 0655
Washington, DC 20528-0655
Telephone: (703) 235-0780
Fax: (703) 235-0442
E-mail: Mary.Ellen.Callahan@dhs.gov
Website: www.dhs.gov/privacy


----- Original Message -----
From: Edward Hasbrouck <edward@hasbrouck.org>
To: Callahan, Mary Ellen
Cc: Plofker, Howard TSA OCC; SUZUKI, SHARI; Pietra, Peter;
Gramian, Nikki; Bird, Rose M; Papoi, Catherine; Lockett, Vania;
Holzerland, William; Callahan, Mary Ellen; Parker, Lynn
Sent: Thu Dec 23 12:53:39 2010
Subject: Re: Response to 7 separate emails

On 23 Dec 2010 at 11:45, "Callahan, Mary Ellen" <Callahan, Mary
Ellen <Mary.Ellen.Callahan@dhs.gov>> wrote:

> 1.)    Renewal of a complaint submitted repeatedly to various
entities
> between November 3, 2009 and December 16, 2009.
>
>            With respect to item #1, this item has been previously
> addressed by colleagues at TSA, by the FOIA Public Liaison within
DHS
> and by NARA's Office of Government Information Services (OGIS).
> Please refer to the attached August 2010 email correspondence
between
> my office and you on these matters.  We also discussed this matter
> during Friday's PIA meeting, including with input from Bob Gellman.
> The DHS Privacy Office considers the item closed.

What we have never received is (1) any confirmation that this was
docketed as a complaint of FOIA and Privacy Act violations, or
included in your reporting of such complaints, or (2) any notice of any
determination with respect to this complaint, whether such

determination was or is administratively final, or what if any means of administrative or judicial review of that determination might be available.

I discussed my inability to obtain confirmation of docketing or a determination with respect to this complaint with the DHS FOIA Public Liaison and with NARA's Office of Government Information Services (OGIS), neither of whom provided me with such confirmation or determination or represented themselves as being the office to whom my complaint had been submitted or responsible for acting on my complaint, but only as offices that might be (but weren't) able to assist in getting a response.

What is the proper point of contact and format for complaints of criminal violations of the Privacy Act in the knowing operation of DHS systems of records without valid SORN's, including SORN's with invalid addresses, and complaints of violations of FOIA in failure to promulgate FOIA regulations containing valid addresses?

> 2.)   Complaint related to TSA10-0134 - FOIA request for TSA screening SOP
> dated 12/9/10.
>
> 3.)   Complaint related to an appeal (dated 10/21/10) regarding
> constructive denial of your request submitted to TSA dated 8/2/10 for
> records related to the processing of TSA08-0723, TSA10-0052,
> TSA10-0134, TSA10-0179, and TSA10-0248 and related appeals.
>
>          Regarding items #2-3, my understanding is that you spoke
> with Howard Plofker of TSA at length regarding these items on December
> 14 and at that time, Howard provided you with detailed status
> information on all items.

That is incorrect.  I spoke with Mr. Plofker on December 14th.  At that time, he told me he was unable to find the status of these items, but would look into them and get back to me.  I have had no further communication from him, although I have sent follow-up e-mail.

> 4.)   Complaint related to PRIV10-1019, as well as an appeal dated
> 10/21/10 of constructive denial of your request submitted to PRIV
(and
> other entities) 8/17/10 for records related to complaints about FOIA
> matters submitted to various entities between November 3, 2009
and
> December 16, 2009.
>
> As to the initial request listed in item #4, we estimate records
> processed by the DHS Privacy Office will be released to you by
> December 31, 2010, rendering the appeal of constructive denial
dated
> October 28, 2010 moot.  Please note that this is an estimate, and
not
> a guarantee. I understand you've previously been advised on
multiple
> occasions that constructive denial is not something that may be
> appealed under the DHS Interim FOIA Regs (found here:
> http://www.dhs.gov/xlibrary/assets/FOIA_FedReg_Notice.pdf
> <http://www.dhs.gov/xlibrary/assets/FOIA_FedReg_Notice.pdf> ).

Thank you.  This is the first confirmation we have been provided
(other than the receipt from the USPS for our letter, which as you
know doesn't guarantee that a letter actually made its way through
the DHS mail- screening system to the office to which it was
addressed) that our appeal was received.  With what office can we
follow up to track the status of this request and appeal, since items
are often forwarded internally within DHS without notice to the
requester and since we cannot rely on the FOIA and Privacy Act rules
in the CFR and SORN's to indicate which offices, if any, are currently
handling particular categories of requests and appeals?

> 7.)   SORN complaint unrelated to the disclosure-related issues.
>
> With regard to item #7, that is not a disclosure issue nor is it
> before the DHS Privacy Office, but the DHS Privacy Office notes
that
> all of your SORN-related comments were addressed in the final
rulemaking filings.

This is incorrect. Many of these issues relate to disclosure policies, and were unackowledged in the final rules. And we have never received any confirmation that these complaints, some of which were filed with your office in the dockets designated for these matters, were in fact logged, acted on, or reported as complaints of Privacy Act violations, nor any notice of any determinations with respect to these complaints.

We are particularly concerned that the European Union review team for the PNR agreement reported that your office had told them that you had received no complaints of misuse of PNR data, despite our complaints filed with your office in these dockets that the use of PNR data in the ATS violated US laws including the Privacy Act and US obligations pursuant to the International Covenant on Civil and Political Rights.

That statement strongly suggests that our complaints were not, in fact, docketed or included in your reports to the public and the EU.

What is the proper docket or office and form in which to file complaints of misuse of PNR data in ATS, in violation of US law, so that they will (even if determined by your office or the DHS to be unfounded) be included in your reporting of receipt of such complaints?

I thank you very much for looking into these matters, and look forward to eventually getting responses to our outstanding requests and confirmation that these items have been duly docketed and included in your reporting of FOIA and Privacy Act requests, appeals, and complaints.

It is within your authority to make determinations with respect to the validity of complaints, or with respect to access requests and appeals.
But those determinations should be timely, explicit, and communicated to requesters, appellants, and complainants. And those requests, appeals and complaints should, even if denied, be promptly docketed, acknowledged, and included in your reporting of requests, appeals, and complaints.

Again, I apologize for needing to raise these issues at this level, and do so only because our previous efforts have been unsuccessful in determining the status of these matters or getting confirmation that they have been docketed and will be properly included in your reports.

We would hope that being able to point to (and including in your reports) complaints of violations of FOIA and the Privacy Act, both in routine failure to comply with statutory deadlines and with failure to promulgate current request and appeal offices and addresses, would assist you in making the case for additional funding for your office and for expedited processing of new FOIA and Privacy Act regulations and new SORN's for each of the systems of records for which current addresses have not been properly published. In this respect, we hope that our desire to have our requests, appeals, and complaints duly docketed and reported assists you in your work and in bringing the DHS into compliance with the law.

Best regards,

Edward Hasbrouck

----------------
Edward Hasbrouck
<edward@hasbrouck.org>
<http://hasbrouck.org>
1130 Treat Ave., San Francisco, CA 94110, USA
+1-415-824-0214

consultant to The Identity Project (IDP), a program of the First Amendment Project <http://www.papersplease.org>

"Congress shall make no law ... abridging ... the right of the people peaceably to assemble" (U.S. Constitution, Amendment 1)

"Everyone has the right to freedom of movement and residence within the borders of each state.  Everyone has the right to leave any country, including his own, and to return to his country."
(Universal Declaration of Human Rights, Article 13)

"Liberty of movement is an indispensable condition for the free development of a person."
(United Nations Human Rights Committee, General Comment No. 27)